THE NATIONAL BANK IN NORTH KANSAS CITY, A CORPORATION, APPELLANT, V. BANK OF NORTH KANSAS CITY, A CORPORATION, RESPONDENT.—172 S. W. (2d) 967.

Kansas City Court of Appeals. May 24, 1943.

20

*Armwell L. Cooper, James S. Simrall* and *Butler Disman* for appellant.

*Cooper, Neel & Sutherland* and *Simrall & Simrall* of counsel.

22

*Lawson & Hale* and *Ryland, Stinson, May & Thomson* for respondent.

CAVE, J.—This is an appeal from a decree in favor of defendant (respondent) entered by the Circuit Court of Clay County in an equity suit filed by plaintiff (appellant), in which it sought to enjoin the defendant from using and carrying on its banking business in North Kansas City under the corporate name of *"Bank of North Kansas City."*

The relief prayed for was predicated on the allegations that the corporate name of said defendant was an imitation of the corporate name of plaintiff and so similar thereto that it was calculated to and, did deceive, mislead and confuse the public and the present and prospective customers of plaintiff, and induced the erroneous belief that defendant bank was the same as plaintiff bank.

In substance, the petition alleged that plaintiff was a banking corporation organized and existing under the national banking laws of the United States, and had been, since the date of its incorporation, June 26, 1933, engaged in the general banking business in the City of North Kansas City, Clay County, Missouri, with a paid-up capital stock of $50,000; that it had established and enjoyed a valuable banking business in said city and the surrounding territory, and had acquired and enjoyed the confidence and trust of the people of that community by reason of its financial responsibility and the manner in which it had conducted its banking business; and that for many years appellant had been commonly known and referred to among the business institutions and inhabitants of said community as the *"North Kansas City Bank."* That defendant was a banking corporation organized and existing under the banking laws of the State of Missouri, with a paid-up capital stock of $12,000, and was then engaged in the general banking business in the town of Nashua in Clay County, Missouri, but that by corporate action it had changed its name from *"Bank of Nashua"* to *"Bank of Nashua"* to *"Bank of North Kansas City"*, had increased its capital stock to the amount of $25,000 and was proceeding to change its location from Nashua to North Kansas City; and that it had refused and declined to rechange its name, although requested so to do by plaintiff; and prayed that defendant be perpetually enjoined from using and carrying on its banking business in North Kansas City under the name of *Bank of North Kansas City.*

Defendant's answer admits certain allegations, such as the incorporation of the two banks, but specifically denies the essential allegations made in the petition.

Trial was had before the court resulting in a judgment for the defendant and dismissal of plaintiff's petition.

Appellant makes a number of assignments of error, but the effect of all are that, under the pleadings and evidence, the court committed error in finding the issues for the defendant and dismissing plaintiff's petition.

There is no question about the proper incorporation of the plaintiff and defendant, and they both are engaged in the banking business in North Kansas City, a rapidly growing municipality; and that their places of business are located approximately three blocks apart. The evidence disclosed that the plaintiff was first incorporated in April, 1913, as *The National Bank of North Kansas City* under the banking laws of the United States; that thereafter the name was changed to *The National Bank and Trust Company of North Kansas City*; and then in 1933 was again changed to the present name of *The National Bank in North Kansas City*; that during all that time it had been continuously engaged in the banking business in North Kansas City and at the time of trial had deposits of approximately two million dollars.

The record also disclosed that the defendant was incorporated as a state bank in 1905 and located at Nashua, Clay County, Missouri, with the corporate name *Bank of Nashua*. It had continuously done a general banking business under that corporate name, at Nashua, until in May, 1940, it took the necessary steps to increase its capital stock and to change its name from *Bank of Nashua* to *Bank of North Kansas City*, and to move its place of business to North Kansas City. On January 19, 1942, the Commissioner of Finance of the State of Missouri issued a certificate changing its location from Nashua to North Kansas City, and its name from *Bank of Nashua* to *Bank of North Kansas City*.

There was evidence that plaintiff was sometimes referred to by people in and about North Kansas City as the "Bank of North Kansas City," "North Kansas City Bank", "Northtown Bank", and "Bank at North Kansas City." But it was also in evidence that for many years just prior to the filing of this suit, plaintiff was the only bank in North Kansas City, and it seems clear from such evidence that when people referred to it by any of the above names they meant to refer to the only bank in North Kansas City, and not to any definite, well established trade or corporate name.

There was evidence that nine separate letters addressed to defendant and received by it were in fact intended for plaintiff; that checks drawn on other banks were received by plaintiff from its depositors for credit to their account that were endorsed "Pay to the order of the Bank of North Kansas City," or "To the order of North Kansas City Bank"; that such endorsements might lead to confusion and embarrassment but had not done so at the time of trial; that plaintiff had received telephone calls daily that were intended for defendant; and that packages and merchandise had been received by it that belonged to defendant. Such other evidence as is pertinent will be noted in the discussion of the questions of law submitted in the briefs.

It is not contended that the corporate names are identical; therefore, cases dealing with that situation are of little assistance. There is no evidence that the defendant changed its corporate name and moved its place of business for the purpose of deceiving, confusing and misleading the public and thereby damage plaintiff, and cases discussing such a condition are of no aid.

Plaintiff's theory, as set out in its petition and followed in the evidence at the trial, is that because of the similarity of names it is calculated to, and will, deceive, mislead and confuse the public and plaintiff's present and prospective customers, and will, in due course, induce the erroneous belief in the minds of the public that the defendant bank is the same as the plaintiff bank and that in dealing with the defendant bank it is in fact dealing with the plaintiff bank, and thereby irreparably damage the plaintiff. It is generally recognized that the name of a corporation is a necessary element of its existence and the right to its exclusive use will be protected upon the same principle that persons are protected in the use of trade marks (State ex rel. Hutchinson v. McGrath, 92 Mo. 355; Investor Publishing Co. v. Dobinson, 72 Fed. 603); but that general doctrine is not broad enough to protect every corporation from the adoption by another corporation of a similar name under certain conditions and circumstances. As was said by our Supreme Court in the Hutchinson case, *supra,* l. c. 358, "It is difficult to state a precise rule by which one name may be said to be an imitation of another, in the sense of the statute. Where, however, the names so far resemble each other, that a person using that care, caution and observation which the public uses, and may be expected to use, would mistake one for the other, then the new name is to be regarded as an imitation of the former." In the case of International Trust Co. v. International Loan and Trust Co., 153 Mass. 271, the Supreme Court of Massachusetts stated the doctrine in this language: "It is not sufficient that some person might possibly be misled, but the similarity must be such that "any person, with such reasonable care and observation as the public generally are capable of using and may be expected to exercise, would mistake the one for the other.' " [Citing cases.] This is the generally accepted rule in the federal and state courts, but there seems to be a lack of uniformity in applying that doctrine. The courts in some states are much more liberal in granting relief than in others.

It seems clear to us that the name *The National Bank in North Kansas City* is quite different from the corporate name *Bank of North Kansas City.* The dominant feature of plaintiff's title is "The National". This denotes that it is a bank organized under the federal banking laws and subject to federal control and supervision. The public generally recognizes and understands many of the differences in a *national* and a *state bank,* and we can see no justifiable basis for

the contention that the names are so similar that persons and institutions, in the use of reasonable care, are likely to be deceived thereby.

The word "bank" is generic, indicating the kind of business carried on by that institution, and no corporation can secure the exclusive right in a given community to the use of that word. [Sanders v. Utt, 16 Mo. App. 322; Trask Fish Co. v. Wooster, 28 Mo. App. 408; The Furniture Hospital v. Dorfman, 179 Mo. App. 302; Detroit Savings Bank v. Highland Park State Bank of Detroit, 201 Mich. 601.] It is also the general rule that when they are properly descriptive, the use of geographical words (North Kansas City) in a business name will not be enjoined, in the absence of estoppel or actual fraud, or public misleading. [Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581; Columbia Mill Co. v. Alcorn, 150 U. S. 460; Detroit Savings Bank v. Highland Park State Bank of Detroit, *supra*; American Brewing Co. v. St. Louis Brewing Co., 47 Mo. App. 14; Wolf Bros. v. Hamilton-Brown Shoe Co., 165 Fed. 413; A. J. Reach Co. v. Simmons Hardware Co., 155 Mo. App. 412; and Umpqua Broccoli Exchange v. Umqua Valley Broccoli Growers (Ore.), 245 Pac. 324.] While no case involving geographical name of a bank has arisen in Missouri, our courts have followed the general rule on this question announced in other states. We do not mean to hold that the use of a generic or geographical name may not be enjoined if it is purely fanciful, false, or misleading, but that situation does not exist here.

We have considered the specific cases cited by the plaintiff where the names were so similar that the court prohibited the use by the defendant, but a careful reading of those cases and the corporate names involved, we think, distinguish them from the case under consideration. Without lengthening the opinion to distinguish each case, we merely refer to them as follows: Drugs Consolidated, Inc., v. Drug, Inc., 144 Atl. 656; Grand Rapids Furniture Co. v. Grand Rapids Furniture Shops, 191 N. W. 939; In Re Albany City Savings Inst., 190 N. Y. S. 334, 191 N. Y. Supp. 913; Middletown Trust Co. v. Middletown National Bank, 147 Atl. 22; Delaware Charter Co. v. Delaware Charter Service Co., 144 Atl. 659. For other cases where the courts have apparently been more liberal in allowing the use of similar corporate names, we can cite New York Trust Co. v. New York County Trust Co., 211 N. Y. Supp. 785; In Re Los Angeles Trust Co., 112 Pac. 56; Michigan Savings Bank v. Dime Savings Bank, 162 Mich. 297; 127 N. W. 364; Peoples Trust Co of Pittsburg v. Safe Deposit & Trust Co. of Pittsburg, 102 Atl. 412; Silver Laundry & Towel Co. v. Silver, 195 S. W. 529; Soft-Lite Lens Co. v. Optical Service Co., 133 S. W. (2d) 1078.

Plaintiff contends that although geographical and generic names are not capable of exclusive appropriation in corporate names, nevertheless Missouri has, in effect, done away with the common-law rule

by specific statutes, and directs our attention to Sections 5015 and 7940, Revised Statutes 1939. The first section relates to certificates of corporations generally and provides, "No certificate of its incorporation or certificate of its change of corporate name shall be issued by the secretary of state to any company or association; first, under the same corporate name and style as that of any existing corporation, *or an imitation of such name* . . . ." (Italics ours.) Section 7940 relates to banking corporations and provides, "The articles of agreement mentioned in this article shall set out: (1) The corporate name of the proposed corporation, which shall not be the name of any corporation heretofore incorporated in this State for similar purposes, *or an imitation of such name.*" (Italics ours.) In argument, plaintiff gives great weight to the language *"or an imitation of such name"*, and contends that said statutes do not specifically exclude "geographical" and "generic" terms from their prohibition, and therefore such statutes have done away with the common-law rule as to the use of such names. We do not believe the statutes quoted are or were intended to be sufficiently broad to do away with such common-law rule. In State ex rel. Hutchinson et al. v. McGrath, *supra,* the Supreme Court had under consideration the identical language, and while the court did not directly discuss the question of the effect the statute may have had on such common-law rule, nevertheless it based its opinion on the proposition that the names were so similar that reasonably prudent persons would be constantly liable to mistake the one for the other.

Our attention is directed to the case of Empire Trust Co. v. Empire Finance Corp., 226 Mo. App. 298, 41 S. W. (2d) 847, but the principles of law announced in that case are not in conflict with our conclusion herein. The court there was discussing the question of whether the petition stated a good cause of action, the trial court having overruled a general demurrer and the defendant refused to plead further, and judgment was entered in accordance with the prayer of the petition. On appeal this court held that the demurrer admitted all well pleaded facts, one of which was "that the public had been deceived or confused by the use of defendant's corporate name into the belief that it is the same company as plaintiff." Of course, if that fact is admitted or is proven by substantial evidence, then it would be proper for the court to permanently enjoin a defendant from pirating the corporate name of some corporation already in existence. But in this case, that fact is not admitted, but strenuously denied, and we hold the evidence does not justify the conclusion that persons using the care and caution that the public generally is capable of using would be deceived or confused by the names of these two banks.

Plaintiff's next contention is that "a corporate name is a property right that will be protected against unlawful appropriation and, if

there is a sufficient similarity to indicate probable deception, actual deception or intent to defraud need not be proved.'' Many cases are cited to support that general proposition, and with it we have no quarrel. But we do not think it is applicable here, because there is not a sufficient similarity of names to indicate probable deception for the reasons above assigned. Furthermore, a broader latitude has been allowed in the matter of similarity of names in banking institutions than perhaps in ordinary commercial enterprises. In denying an injunction in New York Trust Co. v. New York County Trust Co., *supra*, l. c. 786, the court said:

''It is a well-known fact that a broader latitude has been allowed in the matter of a similarity of names in banking institutions than perhaps in ordinary commercial enterprises. Thus, the 'United States Mortgage & Trust Company' has been permitted to exist in the same community with 'United States Trust Company;' likewise, 'New York Savings Bank' and 'Greater New York Savings Bank;' also, 'New York Trust Company' and 'Bank of New York & Trust Company.' Instances of this sort may be multiplied as strongly supporting the liberal policy in this direction.''

It is also contended that ''evidence as to the popular or abbreviated name by which a corporation is known is material in consideration of the simulation of the same in another corporate title.'' Many authorities do announce that doctrine. [Philadelphia Trust, etc., v. Philadelphia Trust Co., 123 Fed. 534; Goodyear's India Rubber Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598.] But there are many cases holding to the contrary. [Detroit Savings Bank v. Highland Park State Bank, *supra*; Central Mutual Auto Ins. Co. v. Central Mutual Ins. Co. of Chicago, 275 Mich. 554; Employers Liability Assurance Assn. v. Employers Liability Ins. Co., 10 N. Y. S. 845; In re United States Mortgage Co., 83 Hun. 572, 32 N. Y. S. 11; Michigan Savings Bank v. Dime Savings Bank, *supra*] This direct question has not been decided by any court in Missouri; and we consider it unnecessary to decide that question under the evidence in this case, because, prior to the time defendant moved its banking business to North Kansas City, the plaintiff was the only bank located in that municipality, and, at times, may have been referred to by the various names above indicated, but such references were to the *only bank* in that community and were not strictly abbreviated names for the corporation.

We have read the many cases cited by able counsel in the briefs, and conclude that the general principle to be gathered from all the decisions is that if the corporate names are identical or so similar that persons using due care and caution, such as the public generally are capable of using, would likely be deceived and misled by the similarity, then equity should grant relief to the corporation having prior legal claim to a particular corporate name. But if the pleadings and

30

evidence will not support that conclusion, then relief should not be granted.

We are forced to the conclusion in this case that the names of the corporations are not so similar that the public is likely to be deceived, misled and confused. It follows that the trial court did not err in dismissing plaintiff's bill. The judgment should be affirmed. It is so ordered.

All concur.