GENERAL FINANCE LOAN CO. et al. v.
GENERAL LOAN CO.
No. 13495.

Circuit Court of Appeals, Eighth Circuit.

Oct. 7, 1947.

Rehearing Denied Oct. 30, 1947.

Donald Gunn, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., and Barrett, Barrett, Costello & Barrett and Wendell H. Shanner, all of Chicago, Ill., on the brief), for appellants.

Roland F. O'Bryen, of St. Louis, Mo. (Fred L. Williams, Robert A. Schlafly, and Charles S. Baumgarten, all of St. Louis, Mo., on the brief,) for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendants from a judgment and decree for the plaintiff permanently enjoining defendants, their officers, agents, servants, employees, privies, successors and assigns, from using the word "General" or any name identical with or similar to or in imitation thereof in their official titles and in the conduct of their businesses in the city of St. Louis and in the state of Missouri. All the parties are engaged in the loan business in Missouri, and the judgment is predicated upon a finding of unfair competition in the defendants' use of the word "General" in their corporate names.

The evidentiary facts are not in dispute.

The plaintiff-appellee, General Loan Company, was incorporated under the laws of Indiana on June 15, 1927, as a wholly owned subsidiary of the American Loan Company, a corporation which had been in the loan business many years. The plaintiff was authorized to do a small loan business, that is to make loans of not more than $300, in Missouri on July 25, 1927, and ever since has been engaged in that business in St. Louis and surrounding territory. The plaintiff was the only company using the word "General" in its corporate name and engaged in the loan business in that territory until the defendants entered the field in March, 1945. From January 1, 1928, until December 31, 1945, plaintiff had paid out for advertising more than $185,000, or over $10,000 a year. It advertised in newspapers, magazines, by radio, direct mail, bill boards, street cars, post cards and telephone and city directories. Its customers' mailing list contained more than 2,500 names. In its advertising prominence was given to the word "General." Its paid-up capital stock and surplus were $166,000. With nearly 8,500 customers a year it made approximately 15,000 loans aggregating $1,000,000, or an average of about $140 each.

The defendant-appellant, General Finance Corporation, was incorporated under the laws of Michigan on May 12, 1933, and was authorized to do business in Missouri on February 18, 1944. Since March 15, 1945, it has been engaged in the general loan and discount business in St. Louis. Its subsidiary, the defendant-appellant, General Finance Loan Company, was incorporated under the laws of Delaware October 5, 1940; was licensed to do a small loan business in Missouri December 16, 1944, and since March 15, 1945, has been engaged in that business in St. Louis. Both defendants do business at the same address in St. Louis. There they have carried on by various means, jointly and separately, extensive advertising, in all of which prominence has been given to the word "General." The capital of General Finance Corporation is $22,000,000; the capital of General Finance Loan Company is not shown in the record.

On March 4, 1945, the plaintiff General Loan Company, through its attorney, sent the defendant General Finance Corporation a letter saying that plaintiff had been operating a small loan business in St. Louis since 1927; that it had built up a good reputation for fair dealings; that because of its established business under the name of General Loan Company it had a right to the use of that name and a right not to have other companies use a similar name in the same type of business; that the advertising of defendant was confusing the public; and

it demanded that defendant cease and desist from using a similar name. On June 9, 1945, the defendant, through its attorney, answered declining to make any adjustment in its name.

Plaintiff filed its petition on September 12, 1945, and defendants filed their joint answer thereto on December 6, 1945.

■ In their brief appellants set out eleven "Points Relied Upon and Intended to be Urged." However, under their "Statement of Points to be Argued and Authorities" they set out and discuss but three points. Our Rule 11(b) Fifth requires that the printed brief contain "A concise statement of each point to be argued, with a complete list of all cases and statutes referred to in the argument covering the point." It has long been a rule of federal appellate courts that points not briefed and argued in a civil case will generally be regarded as abandoned, requiring no consideration on appeal. American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143, 145, certiorari denied, 317 U.S. 687, 63 S.Ct. 257, 87 L.Ed. 551, petition for rehearing denied, 317 U.S. 712, 63 S.Ct. 433, 87 L.Ed. 567; Brown Sheet Iron & Steel Co. v. Maple Leaf Oil & Refining Co., 8 Cir., 66 F.2d 787; Whiting v. United States Bank, 13 Pet. 6, 38 U.S. 6, 13, 10 L.Ed. 33; I.T.S Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 432, 47 S.Ct. 136, 71 L.Ed. 335; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 369, 47 S.Ct. 400, 71 L.Ed. 684.

We may, however, in our discretion consider a plain error apparent on the face of the record for the purpose of avoiding a manifest miscarriage of justice, or where the issue raised is one of public concern, even in a civil case. Kincade v. Mikles, 8 Cir., 144 F.2d 784; National Aluminate Corporation v. Permutit Co., 8 Cir., 144 F.2d 93.

Under the last stated rule one only of the Points relied upon, but not argued, merits our attention. Point VI reads:

"The court erred in failing to find, make, and enter a Finding of Fact to the effect that the appellant General Finance Corporation is not in the same business as the appellee, is not a competitor of the appellee

and does not operate in the same field as the appellee and therefore is not subject to restraint in the use of the word 'General' in its title."

But the court did find that:

"The businesses conducted by the plaintiff and defendants are so similar that there has been, and there is a likelihood to be, a confusion by the public, the trade, customers or prospective customers as to the parties using said name 'General' in the loan and discount business, to the detriment of the plaintiff."

And the court concluded:

"Although the business of plaintiff and defendant, General Finance Corporation, may not directly enter into competition, nevertheless plaintiff is entitled to relief as there is a probability of interference and a probability that persons will be deceived by said defendants' continued use of the name in the loan and discount business."

■ It is true that under the early English and American cases absence of direct competition in the same identical field of business was a good defense to a charge of unfair competition. But in this country that rule has been progressively relaxed in many jurisdictions in suits to enjoin unfair competition. 52 Am.Jur., Trademarks, Tradenames, Etc., §§ 97, 142; Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6; Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039; British-American Tobacco Co., Ltd., v. British-American Cigar Stores Co., 2 Cir., 211 F. 933, Ann.Cas.1915B, 363. As pointed out hereinafter, this case is controlled by Missouri law, and we must look to the decisions of the Missouri courts to determine this issue. Since the point is not argued no Missouri authority has been cited, and we have found none in point. But see National Telephone Directory Co. v. Dawson Mfg. Co., 214 Mo.App. 683, 263 S.W. 483, cited, quoted and commented upon by this court in Hanson et al. v. Triangle Publications, Inc., 8 Cir., 163 F.2d 74, 78. We there said, "* * * there can be unfair competition although the businesses involved are not directly competitive. Under present gener-

al law, the use of another's mark or name, even in a noncompetitive field, where the object of the user is to trade on the other's reputation and good will, or where that necessarily will be the result, may constitute unfair competition." (Citing authorities.) In view of the situation presented here we must regard the point as abandoned or that the parties concede that Missouri law is consistent with the cases cited supra.

The points argued by appellants to obtain a reversal are:

1. That the evidence does not support the finding and conclusion of the court that any actual confusion either resulted or was likely to result from the use by appellants of the word "General" in their respective names;

2. That the name "General" is of a type which can not acquire a secondary meaning and thus become the property of any business corporation; and

3. That the evidence does not support the finding and conclusion of the court that the name "General" had acquired a secondary meaning, thus so identifying it with the appellee as to give to the appellee a right to its exclusive use.

■ Appellants' first contention is without merit. Jurisdiction of the federal courts results from the diversity of citizenship of the parties and the amount involved. Concededly the law of Missouri applies. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The ultimate question is not, therefore, whether the evidence shows actual confusion but whether confusion is likely to result in the use of similar corporate names of parties engaged in kindred businesses in the same territory, or whether the names of the defendants are so distinguished from that of the plaintiff as to prevent any probable confusion. Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861, 863. The question of confusion is one of fact, but it is not incumbent upon the plaintiff to allege and prove actual confusion or deception, but only such similarity of names with other facts and circumstances as to show that confusion may result. Supreme Lodge of World, Loyal Order of Moose v. Paramount Progressive Order of Moose, 224 Mo.App. 276, 26 S.W.2d 826; Mary Muffet, Inc., v. Smelansky, Mo.App., 158 S.W.2d 168. The evidence supports the findings of both actual and probable confusion.

Appellants' second and third contentions assail the findings of the court relating to the word "General" occurring in the names of all the parties.

■ Appellants first say that the word "General" can not acquire a secondary meaning; that it belongs to that class of words known as publici juris which are open to use by all persons. The rule is thus stated in Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861, 862: " * * * names which are mere descriptive terms of the business and generic in their nature are not capable of being appropriated by any one. * * * there can be no unfair competition in the use of such terms. For instance, no one could appropriate the name of 'Swedish Snuff Store' or 'Felt Hat Store,' 'Law Book Store,' 'Divinity Book Store,' or any such name as would simply notify the public that a particular class of business or merchandise was carried on or kept there." Clearly the word "General" does not belong to this class of words.

■ Even though the word "general" should be regarded as a descriptive word it may acquire a secondary meaning when used as a part of the name of a business so as to sustain an injunction against its use in the same capacity by a later competitor in the same territory. Much of the discussion of the Missouri Court in the case of Empire Trust Co. v. Empire Finance Corporation, 226 Mo.App. 298, 41 S.W.2d 847, 848, is applicable to the instant case. In that case the Empire Trust Co., a corporation, had been engaged in buying and selling commercial paper for several years in the city of St. Joseph, Missouri, when the Empire Finance Corporation entered the same city as a competitor. The Trust Company brought suit to enjoin the Finance Corporation from using the word "Empire" in its corporate name. Judgment for the plaintiff was entered as prayed and the defendant appealed. In affirming the decree

of injunction the Court, among other things, said:

"It is true the name of the defendant is not identically the name of the plaintiff; but, looking to the allegations of the petition, we find that the word 'Empire' is the distinguishing feature in the name of plaintiff and, also, in the name of defendant; that each of the corporations was organized for the same purpose; that each of them is located in the same city; that before the organization of defendant company the plaintiff had been engaged in business for many years, had built up a large and lucrative business in that city and in the surrounding territory, and enjoyed the confidence and trust of the people of said community; that its business had been advertised in that locality for many years, and that it was known as a company engaged in the business of purchasing, holding, dealing in, and selling notes and other negotiable securities, and that the public had come to know and in many instances to speak of plaintiff as 'The Empire';

\*　　\*　　\*.　　\*　　\*　　\*

"\* \* \* We have not been cited to any case, nor have we found one where, upon a similar state of facts, relief, such as here sought, has been denied."

The similarity of the present case and the Empire Trust case is obvious. In this case the word "General" is the dominant first word in the name of each of the three corporations. All are located in the city of St. Louis and are engaged in the same general type of business. For eighteen years before the defendants began business there the plaintiff was engaged in the loan business in St. Louis. During that time plaintiff had built up a large and lucrative business. Large sums had been spent annually in advertising its business. The word "General" was emphasized in all of its advertising. When defendants entered the city they likewise emphasized the word

"General" in their advertising, as "when you need extra money, see General. \* \* \* You can get any amount, from $25 to $1500 at General. \* \* \* General has located its new, modern and spacious office in the heart of St. Louis' business district— second floor, 315 North 7th Street \* \* \*," where both defendants had their offices. The evidence showed some instances of actual confusion as a result of the similarity of names and the character of their advertising.

The court found, and the evidence supports the findings, that "Plaintiff, through its advertising and long course of dealings, has built up a large and lucrative business and has so identified the word 'General' with itself in connection with the small loan business in St. Louis and surrounding territory as to give it a secondary meaning as applied thereto and especially in the type of business in which it is engaged"; that "Plaintiff was the first one to use the word 'General' in the state of Missouri as a part of its official name in conducting this type of business"; that defendants have been advertising and publicizing the word "General" since they have been in business in the state; that there have been cases of actual confusion as a result thereof and that there is "a likelihood and probability of additional confusion from the continued use of the word 'General' by the defendants as part of their official name in conducting their business in St. Louis and surrounding territory." The record, we think, sustains the findings of the court.

We have read all the cases cited by defendants in support of their contentions and they are not inconsistent with the cases cited herein. It would be useless to extend this opinion by distinguishing them severally here.

The judgment and decree appealed from is, therefore, affirmed.