This case comes up for hearing on application for a permanent injunction.
The Smyth Sales Corporation, complainant, is the authorized agent and distributor in Essex and Morris counties for the sale and installation of products manufactured by the Silent Automatic Corporation and sold by the Silent Automatic Sales Corporation. It was incorporated in New *Page 139 
Jersey in May, 1927. Since that time it has been engaged in the business of selling and installing Silent Automatic Oil Burners. A large business has been developed and the sales have reached a large figure, in the neighborhood of $300,000, and more than $40,000 has been expended in advertising.
The name "Silent Automatic" forms part of the corporate title of both the Silent Automatic Corporation, the manufacturing company, and the Silent Automatic Sales Corporation, the selling company. It has been registered in the United States patent office as the trade-mark under which the Silent Automatic Corporation shall designate its products. These products have become known to the public and the trade as the Silent Automatic.
The Smyth Sales Corporation caused its offices to be listed in the winter of 1927 and the summer of 1928 issues of the Northern New Jersey telephone directory of the New York Telephone Company (now New Jersey Bell Telephone Company), under the name "Silent Automatic Oil Burner." These listings have appeared under the municipal headings of Montclair, Newark and the Oranges. In each case the address given has been 379 Bloomfield avenue, Montclair, and the telephone number, Montclair 8282.
The defendant is engaged in the business of selling and installing oil burners manufactured by the May Oil Burner Corporation and known as the "Quiet May" Oil Burner. He has his offices at 28 Valley road, Montclair. In the summer of 1928, he caused his offices to be listed in the Northern New Jersey telephone directory of the New York Telephone Company, (now New Jersey Bell Telephone company), under the name "Silent May Automatic Oil Burner Company." This name was listed under the municipal headings of Montclair, Newark and the Oranges, and in each case the address was given as 28 Valley road, Montclair, and the telephone number, Montclair 3058. These listings appeared directly beneath the corresponding listings of "Silent Automatic Oil Burner" and have been continued in every issue of the telephone directory up to the present time. *Page 140 
The oil burners manufactured by the May Oil Burner Corporation and sold by the defendant are known to the public and trade by the name of "Quiet May." There is no oil burner known either to the public or the trade as "Silent May Automatic."
The questions for me to decide, therefore, are: Do these listings tend to confuse the public? Are they unfair competition? And should they be enjoined? I think the answer to all three should be in the affirmative. In the case of Eureka Fire HoseCo. v. Eureka Rubber Manufacturing Co., 69 N.J. Eq. 159, the court says (at p. 166):
"Even if the addition of the other words in its title had been such as to clearly indicate that defendant, and not complainant, made the "Eureka" goods in question, yet as defendant, when it assumed this name, was unknown to dealers in these goods, the effect of placing the familiar name on them was, according to the doctrine of several well-considered cases, to give defendant the benefit of the well-established reputation of the articles and to derive a greater benefit from their fraud."
In Safety Storage Co. v. Lupenski, 100 N.J. Eq. 385 (at p.386), the court said:
"* * * * after the complainant has used its present name in its business in the community, where it has become known generally, and where the public has come to know it by name adopted and used, any unfair interference with, or appropriation of, a dominant part of that name by a competitor, who uses it in a way which would ordinarily deceive the public into believing that such competitor is the original user, to the detriment and loss of the originator of the name, is unfair business competition and should be restrained."
And, in Hilton v. Hilton, 90 N.J. Eq. 564, the court stated the law (at p. 567):
"The test is whether the use by the defendant of the words in dispute is likely to deceive ordinary purchasers buying with such care as would usually be exercised in such transactions. Wirtz
v. Eagle Bottling Co., 50 N.J. Eq. 164; Johnson Johnson v.Seabury Johnson, 69 N.J. Eq. *Page 141 696; National Biscuit Co. v. Pacific Coast Biscuit Co.,83 N.J. Eq. 369. A nice discrimination is not expected from the ordinary purchaser. International Silver Co. v. William H.Rogers Co., 67 N.J. Eq. 646. Neither actual confusion nor actual fraudulent intent need be shown where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off his goods or business as and for that of the complainant. International Silver Co. v. William H. RogersCorp., 66 N.J. Eq. 140; Wirtz v. Eagle Bottling Co., supra;Rubber and Celluloid Harness Trimming Co. v. Rubber-Bound BrushCo., 81 N.J. Eq. 419; National Biscuit Co. v. Pacific CoastBiscuit Co., supra."
And, finally, in the case of National Biscuit Co. v. PacificCoast Biscuit Co., supra, the court said (at p. 371):
"The underlying principle that no man has a right to palm off his wares as those of another, thereby cheating the purchasing public and filching the business of a rival, is so essentially an element of natural justice and so solidly imbedded in our jurisprudence, that all that is necessary to quicken a court of equity, is to show that in the particular instance the offense has been committed."
I am of the opinion, therefore, as I said above, that the listing of these names in the telphone book in the conjunction in which they are, is unfair competition. Actual fraudulent intent need not be shown as is contended for in defendant's brief. InWirtz v. Eagle Bottling Co., supra, the court said (at p.168):
"The aggrieved person, in cases of this class, is not required to show intentional fraud, but he makes a sufficient case to give him a right to protection when he shows that the defendant is using his label, or one so nearly like it as to render deception of public and injury to himself probable. Mrs. G.B. Miller Company Tobacco Manufactory v. Commerce, 45 N.J. Law 18.
Neither is he required to prove that persons have actually been deceived, and that his adversary's goods have been purchased under the belief that they were his. If it appears that the resemblance between the two labels is such that it is probable, in the sale of the goods *Page 142 
of the parties, the one will be mistaken for the other, enough is shown to make it the duty of the court to interfere."
And quoting again from Eureka Fire Hose Co. v. Eureka RubberManufacturing Co., supra, it was stated (at p. 167):
"This protection is granted without regard to the intent of the infringer, because a fraudulent intent to deceive the public and appropriate the benefit of the trade reputation of another is conclusively presumed, from the using of the name or mark after request to desist, although the absence of such intent may in some cases be a defense to an action for damages."
It is unnecessary to cite further authorities although there are many.
The only further question to be considered is that of laches. The evidence clearly shows that Mr. Smyth communicated directly with the Silent May Automatic Oil Burner Company and spoke to Mr. Gordon Kaveny, the brother and agent of the defendant, and objected to the use of the name. Promises were made to discontinue the practice but the name still appeared. It is a question whether, under circumstances such as these, any delay, even though it had not been protested, would bar the complainant on account of laches. See Rubber and Celluloid Harness TrimmingCo. v. Rubber-Bound Brush Co., supra. The infringement here occurred in 1909 but the suit was not started until 1913. Also,International Silver Co. v. Wm. H. Rogers Corp., 66 N.J. Eq. 140;
the infringement occurred in 1898 and the suit was started in 1902.
I see no reason why the defendant, who is the agent of a concern called the Quiet May Oil Burner, should insert in a telephone directory another name so similar to that of the complainant unless his object was to divert to himself the business of his competitor. I will, therefore, advise a decree enjoining him from so doing. *Page 143